**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>**MOULDI SAYEH,**<br><br>           Debtor | Chapter 11<br>Case No. 08-19596-FJB |

**MEMORANDUM OF DECISION ON
MOTION OF CHAPTER 11 TRUSTEE FOR DAMAGES AND SANCTIONS
AGAINST THE DEBTOR FOR UNAUTHORIZED REMOVAL OF ESTATE ASSETS**

By the motion before the Court, the Chapter 11 Trustee, Anne White, seeks actual and punitive damages and other relief against the debtor, Mouldi Sayeh, for violating the automatic stay by removing estate assets from the premises with which they were imminently to be sold. Having held an evidentiary hearing and for the reasons set forth below, the Court will award compensatory damages of $51,683.30 but deny punitive damages and other relief.

**FACTS AND PROCEDURAL HISTORY**

Mouldi Sayeh filed a petition for relief under chapter 11 of the Bankruptcy Code on December 16, 2008. At the time, his assets included the real property located at 254 Newbury Street in Boston, which he operated as a small, high-end hotel. The hotel occupied the building's main and upper floors. In addition, Sayeh rented out the basement level of the building to a third party to operate a restaurant there that would complement the hotel operation upstairs. The hotel parts of the building were furnished mostly with furniture and art work that did not belong to Sayeh but were leased to him by a third-party, his friend Mohammed Khusro, as evidenced by a written lease. The furnishings of the restaurant belonged to Sayeh.

On July 28, 2009, the Court ordered the appointment of a chapter 11 trustee in the case and charged her with (i) investigating the profitability and viability of the hotel and restaurant and the advisability of the continuation of such businesses and (ii) reporting to the Court as to the advisability of converting the case to one under Chapter 7 or, in the alternative, immediately

selling the property through the Chapter 11 proceeding. The United States Trustee appointed attorney Anne J. White (the "Trustee") to serve as trustee. She investigated the business and reported to the court as requested, stating that the business operations were not profitable and that sale of the property was the most advisable option.

In the meantime, she continued to operate the hotel through Sayeh. She elected not to terminate his access to the premises and instead left him and his family to administer the affairs of the hotel, albeit under her control and supervision. No evidence was adduced as to the instructions she gave him, if any, as to his duties and his discretion with respect to administration of the hotel and personalty entrusted to his care. Nor was evidence adduced as to whether he received instruction from his own attorneys as to his rights with respect to the assets of the estate. Sayeh is not an attorney and not well-versed in bankruptcy law.

With her report, the Trustee filed a motion for authority to sell the real property ("the Hotel"), the liquor license and other licenses associated with the property, and all the personalty located at the premises to James T. Garnache, Trustee of 254 Newbury Street Realty Trust ("Garnache") for a proposed sale price of $3,300,000. The proposed sale was subject to later counteroffers, of which she received one. She served the motion and notice of the hearing thereon on Sayeh and his attorney. No one objected to the proposed sale. At the hearing on the sale motion, held on October 7, 2009, the Trustee received final sealed bids from the two offerors and accepted Garnache's bid of $4,110,000, which exceeded the other by $627,272, a substantial premium. Garnache's bid specified that of his total bid, $4,090,000 was for the real property, $5,000 was for the licenses, and the balance of $15,000 was for the personal property. Garnache made this allocation for his own federal income tax purposes, not to satisfy any concern of the estate, as the Trustee was selling the various assets as a package.

The Trustee, Garnache, and the counterofferor did not know that during the evening before the sale hearing, Sayeh and Khusro between them had removed all the personalty and certain fixtures from the property. Khusro had asked Sayeh for permission to remove his

2

personalty, and Sayeh assented, saying, "it's your property–take it," or words to that effect. Khusro removed all his property from the premises, including many items of furniture and art work. Aside from granting Khusro access to the premises, Sayeh did not aid Khusro in removing Khusro's property. I cannot find that Sayeh acted in bad faith in permitting Khusro to remove his property from the premises. Sayeh had received no communication from the Trustee on the issue; nor was there evidence that Sayeh had received instruction from his own counsel; and Sayeh surely believed the assets in question were Khusro's, not the estate's.

After Khusro took his things, Sayeh himself removed almost every item of personalty that Khusro had not already removed and some fixtures, all items that belonged to him at the time of his bankruptcy filing.

These removals had not been authorized by the Trustee. Neither Sayeh nor Khusro had sought permission from the Trustee for their respective removals. By letter dated Thursday, October 1, 2009, six days before the hearing on the Sale Motion, Khusro, through his attorney, Joseph Gruss, had sent a letter to the Trustee in which he asserted his interest in the leased items and expressed his intent to reclaim certain personalty from the Hotel that he had loaned to the Debtor. By reply letter dated Monday, October 5, 2009, the Trustee expressed her position that, because Khusro had failed to provide public notice of any alleged consignment of his personalty to the debtor, the Trustee could defeat any property interest asserted by Khusro and administer the personalty as property of the bankruptcy estate. It is not clear when Khusro's counsel received this reply and when counsel communicated its contents to Khusro, but Khusro concedes that he proceeded with the removal before receiving the Trustee's reply. There is no evidence that Sayeh had any knowledge of these communications or of the Trustee's position as to Khusro's personalty.

A few hours after the sale hearing, the Trustee received reports from Sayeh's neighbors on Newbury Street that Sayeh had removed a large number of assets from the property, and she obtained verification from Khusro's attorney that Khusro too had been involved. On

3

October 8, 2009, the Trustee filed an Emergency Motion requesting an order (i) compelling Sayeh and Khusro to provide sworn accountings of any and all assets removed from the Hotel, (ii) compelling Sayeh to turnover any or all of those assets at the discretion of the Trustee, (iii) enforcing Sayeh's oral agreement not to reenter the Property, and (iv) sanctioning Sayeh and Khusro for the removal and retention of removed property, all of which she characterized as property of the bankruptcy estate.  On October 9, 2009, the Court held a hearing and entered an order on the motion.  The order required that Khusro (1) return the assets he had removed from the property by October 12, 2009 at 5:00 p.m. unless by that time he had reached an agreement to the contrary with the Trustee and Garnache and (2) by the same deadline, provide the Trustee with a sworn accounting as to the assets he had removed.  The same order required Sayeh to (i) return all items he had removed to the premises and restore the premises to their condition before removal by Wednesday, October 14, 2009, at 5:00 p.m. and (ii) provide the Trustee a sworn accounting of all items he removed by Monday, October 12, 2009 at 5:00 p.m. With respect to Sayeh only, the order further stated:

> If he fails to comply with his obligations under paragraph 1 and/or 2 above, coercive sanctions shall and hereby are entered against Mr. Sayeh in the amount of $300.00 per day (subject to increase upon request should this sum prove ineffective) from the first date of noncompliance, to accrue until his compliance with both paragraphs is complete; which sanctions shall, when finally quantified by the court, be recoverable by the trustee from any surplus otherwise payable to the debtor, surcharge of the debtor's exemptions, or any other means available to the trustee.

As to both Sayeh and Khusro, the order further stated that the Court deferred ruling on further sanctions until further request for such sanctions was made by the Chapter 11 Trustee.  (The present motion is that further request.)

On October 12, 2009, Garnache and Khusro reached an agreement in principle under which Khusro would purchase from Garnache the items he had removed from the premises for the sum of $52,000.  Because of uncertainty about the extent of assets that had been removed, the parties actually entered into their agreement only on October 26, 2009.  Pursuant to their

4

agreement, Khusro did in fact purchase his own assets from Garnache for the stated price.

Sayeh timely returned the vast majority of the assets he had removed from the property. There is disagreement between the parties as to a few items, most notably some bottles of wine, but the Trustee has not carried her burden of establishing that assets were taken that were not returned. Despite the fact that she had devoted considerable resources to accounting for and valuing the assets removed, she adduced little or none of the resulting evidence at the evidentiary hearing on this motion. With respect to the wine, the only evidence adduced was a restaurant wine list—essentially a menu—that in no sense was or purported to be an inventory of the wine collection on the premises when the assets were removed.

Both Khusro and Sayeh provided accountings, not by the October 12 deadline but within a reasonable time thereafter. In both cases, the accountings went through multiple iterations and were supplemented and clarified with examinations taken by the Trustee of both Khusro and Sayeh. I find that both Khusro and Sayeh provided their respective accountings in good faith and, though the accountings did not meet the court-imposed deadline, with as much diligence and competence as each could muster in the circumstances.

On the basis of the removal of property from the premises, Garnache threatened not to purchase the assets for the agreed-upon purchase price and sought to negotiate a price reduction of over $300,000. After three weeks of negotiations and efforts by the Trustee to recover the property and account for the removed assets, the Trustee and Garnache entered into an agreement under which the sale would go forward and the price would be reduced by only $25,000. They memorialized this agreement and the agreement between Garnache and Khusro in a single omnibus agreement. The Trustee promptly moved on an expedited basis for approval of this agreement, and, on October 28, 2009, the Court approved the agreement. The sale to Garnache was consummated soon thereafter, some twenty-two days after the originally-scheduled closing date.

The removals caused the bankruptcy estate to incur losses and administrative expenses

5

it would not otherwise have incurred. The estate suffered a $25,000 reduction in the sale price. It became obligated to pay additional interest totaling $23,240.14—twenty-two days' interest at the rate of $1,056.37 per day—to the entity that held a mortgage on the real property. It incurred accountants' fees of $7,145.25, an appraiser's fee of $1,275.00, a cleaning charge of $3000, a trash removal charge of $400, and a locksmith's charge of $255. And, most significantly, it incurred attorney's fees. The Trustee quantifies these at $72,282.55, but Sayeh correctly contends that this amount includes fees for services unrelated to the unauthorized removals, especially for Rule 2004 examinations of Sayeh and Khusro that, to a large extent, were used for inquiring into matters unrelated to the removals. After deducting (i) half of the roughly $10,000 in attorney's fees attributable to Sayeh's Rule 2004 examination and (ii) $5,000 in other attorney's fees that are at least arguably attributable to usual and ordinary transaction costs of a sale, I find that the attorneys' fees that the Trustee incurred on account of the unauthorized removals totaled $62,282.55. This is a rough measure that, bearing in mind that the Trustee bears the burden of proof and that a precise quantification is not possible, approximates and, it is safe to say, does not overstate the attorneys' fees and expenses attributable to the removals. The losses and expenses enumerated in this paragraph constitute the universe of actual damages to the estate from the unauthorized removals.

The Trustee seeks to recover only some of the total damages from Sayeh: $68,675.06 of the attorneys' fees, all of the accountants' fees, and $1,170.14 of the appraisal costs.[1] Sayeh, however, was not the only party responsible for the legal, accounting, and appraisal costs. Khusro, too, was responsible for a large portion of these damages; and for a subset of this portion, he *alone* was responsible. The damages thus fall into three categories: those for which Sayeh alone is responsible; those for which both Sayeh and Khusro are jointly responsible; and those for which Khusro alone is responsible. The latter category clearly is more than *de minimis*

---

[1] She does not seek to recover from Sayeh any portion of the price reduction or the additional accrued interest, both of which (and more) she sought and did recover from Khusro.

6

in size.  The Trustee's accountings for these fees do not completely distinguish the fees and expenses for which Khusro alone is responsible from those for which Sayeh is either solely or jointly responsible.  Nor, when a particular charge is attributable to both but was made larger by Khusro's actions than would have been necessary to address Sayeh's actions alone, did the Trustee attempt to apportion the charge.  The Court must nonetheless determine, as to any given charge for which the Trustee seeks to hold Sayeh liable, whether there exists evidence that it arose as a consequence of Sayeh's action and not merely Khusro's.  In quantifying the fees and expenses for which Sayeh is responsible, I will subtract from the total of $70,702.80 [comprised of attorney's fees of $62,282.55, accountants' fees of $7,145.25, and the appraiser's fee of $1,275.00] those fees and expenses for which Khusro is solely responsible, many of which the Trustee has identified.  I will also subtract appropriate portions of the fees and expenses for tasks that relate to both Khusro and Sayeh but that, by virtue of Khusro's actions, are greater than they would have been necessary to address Sayeh's actions alone.  On the basis of an item by item analysis, I find that the fees and expenses appropriately attributable Khusro and not Sayeh is $19,019.50 and therefore that the fees and expenses incurred as a result of Sayeh's conduct total $51,683.30.

   Later in the case, the Trustee filed and obtained confirmation of a chapter 11 plan.  Pursuant to the plan, she, as plan administrator, will liquidate the remaining assets of the bankruptcy estate, object to claims as appropriate, and distribute the proceeds, including the remaining proceeds from sale of the Newbury Street property, according to the scheme prescribed in chapter 7 of the Bankruptcy Code.  The plan does not itself award Sayeh a discharge but does contemplate his receiving a discharge, in accordance with 11 U.S.C. § 1141(d)(5)(A), upon completion of all payments under the plan, unless the Trustee prevails in the context of this motion in obtaining a denial of his discharge.[2]

---

[2] As part of her demand for punitive damages under 11 U.S.C. § 362(k)(1), the Trustee asks in the present motion that the Court deny Sayeh a discharge; the plan, which was filed and confirmed while the present motion was pending, specified that Sayeh's right to receive a discharge was subject to the request in the present motion for denial of his discharge.

7

The extent of the dividend that will be paid to general unsecured creditors in this case remains uncertain.  Depending on the disposition of claims objections, the price obtained on the liquidation of the remaining assets, and the extent of future administrative expenses, it remains possible that unsecured creditors will receive a 100 percent dividend.  If they do, then the damages suffered by the estate from the unauthorized removals will have injured only Sayeh himself, as the damages will only have reduced his surplus.  More likely, the damages will have both reduced his surplus and reduced the dividend to unsecured creditors.

By the present motion, the Trustee seeks compensatory and punitive damages against Sayeh under 11 U.S.C. § 362(k)(1) for his unauthorized removals of property from the premises.[3]  As compensatory damages, she seeks $68,675.06 for attorneys' fees and expenses, $7,145.25 for accountants' fees, and $1,170.14 of the appraisal costs.  In addition, she seeks punitive damages in four parts: (i) $2,700 for the nine-day delay in his providing a sworn accounting to the Trustee; (ii) permission to pay from any surplus otherwise owed to Sayeh the $38,368.50 in costs and attorneys' fees incurred by Gamache as a result of the Sayeh's unauthorized removal of assets from the Hotel; (iii) to the extent any such surplus is insufficient to pay Garnache's costs and attorney's fees, an award to Gamache of a nondischargeable claim for any deficiency; and (iv) to the extent there are insufficient funds to pay general unsecured creditors in full, a denial of the discharge Sayeh otherwise would receive under 11 U.S.C. § 1141(d)(5)(A) upon completion of all payments under the plan, leaving the Debtor obligated to creditors for any deficiency.

**<u>DISCUSSION</u>**

The automatic stay is a collection of stays set forth in 11 U.S.C. § 362(a).  At subsection

---

[3] By the same motion, the Trustee also sought compensatory and punitive damages from Khusro. The Trustee and Khusro have settled the demands against Khusro, and the Court has approved that settlement.  Under the settlement, Khusro will waive his $52,000 claim against the estate for the value of his assets (the same assets he removed from the Newbury Street property and then bought back from Garnache).  Because unsecured creditors are expecting a dividend at or near 100 percent, the Trustee values this settlement at the full value of the waived claim.

(a)(3), it stays "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).  Sayeh's unauthorized removal of assets from the Hotel was an act to obtain possession of, and to exercise control over, property of the estate.  Accordingly, Sayeh violated the automatic stay, and he does not dispute this conclusion.

The Trustee seeks damages for this violation under § 362(k)(1), which permits "an individual" injured by a willful violation of the automatic stay to obtain damages.  11 U.S.C. § 362(k)(1).  The Trustee does not complain of injury to herself but of injury to the bankruptcy estate she represents, and a bankruptcy estate is an entity but not a natural person.  Courts are divided on the question of whether a bankruptcy trustee, acting as representative of a bankruptcy estate, is an "individual" within the meaning of § 362(k)(1).  The Trustee, urging the Court to construe individual to include a trustee as representative of a bankruptcy estate, cites and relies upon *In re Garofalo's Finer Foods,* 186 B.R. 414, 439 (N.D. Ill. 1995) (trustee is an 'individual' for purposes of section 362(h) (now recodified at § 362(k)(l))), *In re Mullican,* 417 B.R. 389, 403-04 (Bankr. E.D. Tex. 2008) (the "trustee in this case is an individual representing the estate of individual, consumer debtors and has standing to bring an action against the debtors for a willful violation of the automatic stay"); and *In re Fas Mart Convenience Stores,* 318 B.R. 370, 375 (Bankr. E.D. Va. 2004) (authorizing chapter 11 trustee to pursue § 362(h) damages on behalf of estate).  This Court is satisfied that the better view, as articulated in *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 192 (9th Cir. 1995) (chapter 7 trustee is not an individual within the meaning of § 362(h)) and endorsed in Collier on Bankruptcy, at 3 *Collier on Bankruptcy*, ¶ 362.12[3] (Alan N.Resnick and Henry J. Sommer eds.,16th ed. 2010),[4] is that "individual" does not include a trustee as representative of a bankruptcy estate.  "Individual," which the Bankruptcy Code does not define, means a natural person or human being and does

---

[4] See also *In re Chateaugay Corp.*, 920 F.2d 183 (2nd Cir. 1990) (the use of the word individual in § 362(h) is intentional and limited to natural persons).

9

not mean "entity," which, too, is not a defined term but is used elsewhere in § 362(k). Individual is much narrower in scope than entity.[5] Had Congress intended for § 362(k)(1) to be available to entities in general, it could easily have used the term "entity," as indeed it did when, in 2005, it moved the subsection in question from § 362(h) to § 362(k)(1) and amended it with a good-faith limitation on damages in § 362(k)(2) that applies to "an entity."[6] The Trustee therefore may not have recourse to § 362(k)(1).

This does not leave the Trustee without a remedy. A violation of the automatic stay, which is an injunction, may also be remedied by contempt process issued pursuant to the Court's authority under 11 U.S.C. § 105(a). *Havelock v. Taxel (In re Pace)*, 67 F.3d at 193. Contempt was the only means for enforcing the automatic stay before § 362 was amended in 1984 to permit individuals also to proceed by motions for damages. By virtue of 11 U.S.C. § 105(a),[7] a bankruptcy court has subject matter jurisdiction to employ civil contempt to enforce the automatic stay; though the stay is a statutory injunction, it is deemed to be an order of the court and enforceable as such by contempt. *Id.; Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 445 (1st Cir. 2000) (§ 105 provides a bankruptcy court with contempt power to enforce the discharge injunction). The contempt power conferred by § 105(a) includes the power to compensate the injured party for losses sustained, one of the powers of "civil contempt." *Id*. at 445 (recognizing that bankruptcy courts have appropriately used their contempt power to award actual damages and attorney's fees); *Eck v. Dodge Chemical Co. (In*

---

[5] This is clear from the Bankruptcy Code's definition of person. "The term 'person' includes individual, partnership, and corporation." 11 U.S.C. § 101(41). Person is therefore broader in scope than individual and serves as evidence that individual is confined to natural persons and does not extend to entities in general; otherwise, the definition of person would not have needed to specify that person includes partnership and corporation. However, even "person" is not broad enough in its definition to include a trustee.

[6] Subsection 362(k)(2) states: "If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages." 11 U.S.C. § 362(k)(2).

[7] Section 105(a) provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

10

*re Power Recovery Systems, Inc.)*, 950 F.2d 978, 802 (1st Cir. 1991) ("sanctions in a civil contempt proceeding are employed . . . where appropriate, to compensate the harmed party for losses sustained").

Contempt must be proven by clear and convincing evidence.[8]  In order to establish contempt of the automatic stay, such as would justify a sanction in the form of compensatory damages and attorney's fees, the Trustee must prove that (i) the alleged contemnor committed an act that violated the automatic stay with general intent to commit the act and (ii) with knowledge of the automatic stay.[9]  Due process further requires that the automatic stay, the relevant provisions of law that define its scope, be clear and unambiguous as to whether the conduct in question is prohibited.[10]  However, neither specific intent to violate the automatic stay nor bad faith is required.[11]

The Court is satisfied that the necessary elements have been established by clear and convincing evidence.  Sayeh removed personal property and fixtures from the hotel premises.  The personal property and fixtures were his assets on the date of his bankruptcy filing and by virtue of that fact had become assets of his bankruptcy estate.  11 U.S.C. § 541(a)(1).  He removed the assets with intent to remove them.  His removal of the assets was enjoined by part (3) of the automatic stay, which stays any act to "obtain possession of property of the estate . . . or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  At the time, Sayeh was no longer in possession of the estate's assets and did not have authority to control them.

---

[8] *Langton v. Johnson*, 928 F.2d 1206, 1220 (1st Cir. 1991) ("a complainant must prove civil contempt by clear and convincing evidence"); *In re Dunn*, 324 B.R. 175, 179 (D. Mass. 2005) (clear and convincing standard for contempt applies in bankruptcy discharge context); *In re Parker*, 334 B.R. 529 (Bankr. D. Mass. 2005) (same).

[9] *McDonald v. Norwest Financial, Inc. (In re McDonald)*, 265 B.R.3, 9 (Bankr. D. Mass 2001) (*prima facie* claim for contempt of discharge requires pleading that defendant knew of discharge order and intentionally engaged in conduct that violated it).

[10] *Dunn*, 324 B.R. at 179, and cases cited.

[11] *Pratt*, 462 F.3d at 20-21 (conduct violated discharge notwithstanding absence of bad faith); *McDonald*, 265 B.R. at 9 (state of mind or intent to violate the discharge is not a consideration for civil contempt).

Rather, a chapter 11 trustee had been appointed, and authority over the assets rested in her. 11 U.S.C. § 323(a) ("The trustee in a case under this title is the representative of the estate."). Sayeh knew this, knew that he had been dispossessed of control over the assets, and further understood that the trustee intended to sell the assets and had authority to do so. He knew that he had filed a bankruptcy petition and understood that by virtue of that filing, a stay went into effect that prevented creditors from taking action against him and his assets without leave of court. In fact he had previously opposed the motion of at least one creditor for relief from the stay at an evidentiary hearing. He further understood that upon appointment of a trustee, he too became subject to that stay, at least to the extent that it prohibited him from exercising control over assets of the estate without either the Trustee's permission or leave of court. I am satisfied by clear and convincing evidence that Sayeh was aware of the relevant provisions of the stay and understood that they enjoined him from exercising control over property of the estate in a manner inconsistent with the Trustee's authority.

Sayeh therefore is in contempt of the automatic stay. To redress that contempt, the court may and will enter compensatory sanctions against him, payable to the Trustee on behalf of the estate, in the amount of fees and expenses incurred as a result of Sayeh's conduct, an amount I quantified above at $51,683.30.

The Trustee further seeks, as "punitive damages," four things: (i) $2,700 for the nine-day delay in his providing a sworn accounting to the Trustee; (ii) permission to pay from any surplus otherwise owed to Sayeh the $38,368.50 in costs and attorneys' fees incurred by Gamache as a result of the Sayeh's unauthorized removal of assets from the Hotel; (iii) to the extent any such surplus is insufficient to pay Garnache's costs and attorney's fees, an award to Gamache of a nondischargeable claim for any deficiency; and (iv) to the extent there are insufficient funds to pay general unsecured creditors in full, a denial of the discharge Sayeh otherwise would receive under 11 U.S.C. § 1141(d)(5)(A) upon completion of all payments under the plan, leaving the Debtor obligated to creditors for any deficiency. Only three of these are actually in the nature of

12

punitive damages. The first, $2,700 for the nine-day delay in Sayeh's providing a sworn accounting to the Trustee, is simply the consequence of the coercive sanction contained in the order of compulsion that this court issued on October 9, 2009. It is not punitive but in the nature of compulsion.

I address first those demands that are actually punitive in nature. Section 362(k)(1) of the Bankruptcy Code expressly permits an award of punitive damages for injuries within its scope, but the Trustee may not rely on § 362(k)(1). It is not clear whether, in the exercise of its contempt power under 11 U.S.C. § 105(a), a bankruptcy court has authority to award punitive damages, either as a remedy for civil contempt or under the power of criminal contempt. Courts are divided on the issue. See *In re Dyer*, 322 F.3d 1178, 1193 n.15 (9th Cir. 2003), collecting cases. The First Circuit Court of Appeals appears to have answered the question in the affirmative, see *Bessette v. Avco Financial Services, Inc.*, 230 F.3d at 445 ("bankruptcy courts across the country have *appropriately* used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, *and punitive damages*" (emphasis added)); however, with respect to punitive damages, this pronouncement appears to be dicta: the opinion does not otherwise discuss punitive damages or indicate that punitive damages (as opposed to the power of civil contempt in general) were in issue. Because I conclude for other reasons that punitive relief is inappropriate, I need not decide the issue of authority or subject matter jurisdiction over punitive relief for contempt.

Even if this court had authority to award punitive damages and were satisfied that Sayeh's conduct warranted punishment, the court would find no cause to award punitive damages here. The award of actual damages, though compensatory in purpose, is also sufficiently punitive in effect. This is not an instance where the awarded compensatory damages are merely a return of ill-gotten gains; Sayeh long ago returned what he took. Moreover, Sayeh has already been punished by his conduct in other ways: he has incurred substantial attorney's fees that would not otherwise have been necessary, and he has probably

caused a loss of a significant surplus that would otherwise have inured to his benefit. In addition, Sayeh has no assets from which to pay even the compensatory damages.[12] He has lost his home to foreclosure, and the livelihood with which he cared for his family disappeared with the sale of the Newbury Street property. In these circumstances, no further punishment is necessary or warranted.

This leaves only the Trustee's demand for $2,700 for the nine-day delay in Sayeh's providing a sworn accounting to the Trustee. This demand stems from the coercive sanction contained in the order of compulsion that this court issued on October 9, 2009, a sanction of $300 per day for each day after October 12, 2009 that it took Sayeh to produce to the Trustee a sworn accounting of the items he removed. The intent of this threat was to ensure diligent compliance with the order. Sayeh did not produce a sworn accounting until October 21, 2009, but he produced several unsworn accountings before that deadline. The court found above that Sayeh provided his accountings in good faith and, though late, with as much diligence and competence as he could muster in the circumstances. Finding no want of diligence, the court denies the Trustee's request to augment the award of damages with any portion of the $2,700.

---

[12] I strongly suspect it has and will cost the estate—meaning unsecured creditors—far more to prosecute this motion against Sayeh and collect the awarded damages than it would recover even if it were to recover the full award of damages.

**CONCLUSION**

      For the reasons set forth above, a separate order will enter granting the Trustee's Motion for Sanctions to the extent of actual damages in the amount of $51,683.30 and denying the motion as to the balance of the relief requested.

Date:  February 23, 2011
                                            Frank J. Bailey
                                            United States Bankruptcy Judge